FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 0 1 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-

FNU LNU,
    also known as "Sandra Calzada,"

        Defendant.
----------------------------------------------------------x

MEMORANDUM AND ORDER ON ADMISSIBILITY OF DEFENDANTS STATEMENTS MADE AT BORDER INQUIRY

09-CR-415 (JBW)

APPEARANCES:

| | |
|---|---|
| For the Defendant: | Len Kamdang, Esq.<br>Federal Defenders of New York, Inc.<br>One Pierrepont Plaza<br>16th Floor<br>Brooklyn, New York 11201 |
| For the United States: | United States Attorney's Office<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, New York 11201<br>By: Lan Nguyen, Esq. |

JACK B. WEINSTEIN, Senior United States District Judge:

Table of Contents
I. Introduction........................................................................................................2
II. Motion to Suppress Defendant's Statements on Border Entry...........................2
    A. Facts...............................................................................................................2
    B. Law.................................................................................................................4
    C. Application of Law to Facts...........................................................................4
III. Recommendations for Change in Practice...........................................................5
IV. Conclusion............................................................................................................6



## I. Introduction

Defendant is charged with making a false statement in an application for and use of a passport, misuse of a passport, and aggravated identity theft. The defendant moves to suppress statements she made to Customs and Border Protection ("CBP") officers on the grounds that she was not provided with *Miranda* warnings prior to being questioned.

For the reasons set forth below, defendant's motion is denied. Nevertheless, changes in increased security and probabilities of criminal prosecution may warrant a change in the law. See recommendation in Part III, *infra*.

## II. Motion to Suppress Defendant's Statements Made on Border Entry

### A. Facts

The defendant was arrested following her arrival in the United States by air from the Dominican Republic on December 29, 2008. *See* Suppression Hearing Tr. 8, Aug. 31, 2009. Prior to arrival, CBP Officer Frank Umowski conducted a standard search of the Federal Bureau of Investigation's Criminal History Database for names appearing on her flight's passenger manifest. *Id.* at 9. Revealed was an outstanding New York Police Department arrest warrant for a woman named Sandra Calzada. A person with the same name, place and date of birth was travelling on the flight. *Id.* According to CBP protocol, Umowski issued a "lookout," instructing CBP officers working in the primary passport inspection area to direct the person travelling under the name Sandra Calzada to the secondary inspection area. *Id.*

Upon her arrival at the primary passport inspection area, where she presented a United States passport in the name of Sandra Calzada, the defendant was escorted to the secondary inspection area. *Id.* There, Umowski reviewed the defendant's passport and other documents bearing the name Sandra Calzada. *Id.* at 10.

2

No *Miranda* warnings were given. To determine whether the defendant was a United States citizen entitled to enter the country, Umowski questioned her about her identity through an interpreter. *Id.* at 19-22. She said she was Sandra Calzada, that she was born in Puerto Rico and that she was applying for readmission as a United States citizen. *Id.* at 13.

The officer asked her if she had ever been arrested. She replied that she had not. *Id.*

The woman claiming to be Sandra Calzada was fingerprinted. *Id.* Her fingerprints did not match those of the Sandra Calzada for whom the arrest warrant had been issued. *Id.* at 14. Umowski reviewed "Sandra Calzada's" passport applications for the years 1998 and 2008 in a computer database, observing that while the 2008 application photo was of the defendant, the 1998 application was not. *Id.*

The defendant was then questioned about her knowledge of Puerto Rico to determine whether she or the woman whose picture was attached to the 1998 passport application was in fact Sandra Calzada. *Id.* at 19-20. She was unable to provide any information about places where she had claimed to have lived in Puerto Rico, her history of education and employment in Puerto Rico, or contact information for relatives living there. *Id.* at 20. And she informed Umowski that her only sibling was a *brother*. But the 1998 passport application provided emergency contact information for a *sister* of the applicant. *Id.* at 20.

Defendant's claim was that she had been visiting the Dominican Republic to see her boyfriend, Julio De Los Santos. *Id.* at 22. The officer immediately went to the waiting area. He spoke with a person who identified himself as Mr. De Los Santos. Mr. De Los Santos stated that he had not recently visited the Dominican Republic, and then promptly departed without providing additional information. *Id.*

3

## B. Law

*Miranda* warnings are not required where a person is questioned in a routine border crossing inquiry. *United States v. Silva*, 715 F.2d 43, 46 (2d Cir. 1983); *United States v. Moody*, 649 F.2d 124, 127 (2d Cir. 1981). Rather than being conducted for the purpose of gathering evidence for a criminal prosecution, "the rationale behind a routine customs inquiry is that 'national self protection reasonably require[es] one entering the country to identify himself as entitled to come in.'" *Id.* (*quoting Carroll v. United States*, 267 U.S. 132, 154 (1925)).

An appropriate border crossing inquiry includes questioning the person seeking entry about her personal background and the purpose and nature of her trip. *Id.* at 45. Only where a border crossing interrogation has as its purpose the gathering of evidence for a future criminal prosecution is a *Miranda* warning required. *Moody*, 649 F.2d at 127-28 (holding that where, upon finding a substance described as a "caked talcum powder" on the person of an entrant to the United States, customs agent's question about the nature of the substance was for the purpose of obtaining evidence for a future criminal prosecution and *Miranda* warnings were required). That a defendant's responses to questions asked as part of a border crossing inquiry may ultimately have some evidentiary value for a future criminal prosecution does not by itself trigger *Miranda*. *See U.S. v. Miller*, No. 08-CR-860, 2009 WL 2182382, at *9 (E.D.N.Y. July 21, 2009) (citing *United States v. Adegbite*, 877 F.2d 174 (2d Cir. 1989)).

Merely detaining and questioning a person seeking entry into the United States about her identification in a secondary inspection area does not require a *Miranda* warning. *Silva*, 715 F.2d at 46. Potential entrants have been detained for as long as six hours and fingerprinted as part of a normal inquiry. *Tabbaa v. Chertoff*, 509 F.3d 89, 99-101 (2d Cir. 2007).

## C. Application of Law to Facts

The questioning of the defendant was conducted as part of a routine border crossing inquiry for which no *Miranda* warning is required. Umowski testified that the purpose of his questioning was "to verify if [defendant], in fact, was admissible into the U.S. as a U.S. citizen" and that his questions were not intended to further a potential criminal prosecution. *See* Suppression Hearing Tr. 22, Aug. 31, 2009. Once it was established that the defendant's fingerprints did not match those of the "Sandra Calzada" for whom an arrest warrant had been issued, the officer asked routine questions to determine whether she should be permitted entry into the United States. His interrogation was not designed to elicit responses to be used against the defendant in a later criminal prosecution. *Id.* at 19. It was not Umowski's function or intent, he testified, to determine whether an individual who is the subject of an arrest warrant should be arrested, or whether a person seeking entry to the United States illegally should be prosecuted, but only to determine whether she should be allowed to enter the United States. *Id.* at 5, 21. The questions asked by him, he declared, were part of a routine discharge of his duties. *Id.* Umowski's testimony was credible.

The circumstances of the defendant's brief detention did not require that she be provided with *Miranda* warnings. The defendant was detained in a customs screening area for approximately ninety minutes while CBP officers attempted to ascertain her identity to determine if she could enter the United States. *Id.* at 6. The questions asked did not require *Miranda* warnings.

## III. Recommendations for Change in Practice

Although the motion to suppress is denied, there is some force in the defendant's argument that because of increased criminal penalties and prosecutions arising out of post-9/11

border inquiries, *Miranda* warnings are appropriate when a person entering the country is questioned in a secondary inspection area. During the eleven months between October 1, 2008 and August 31, 2009, of the 557,260 travelers referred to the secondary inspection area at John F. Kennedy Airport, 463 persons were determined by CBP to match criminal arrest warrants and CBP initiated 68 criminal prosecutions. *See* Letter from the U.S. Attorney's Office, September 23, 2009, No. 09-CR-415, Docket No. 50. These statistics do not include the considerable number of prosecutions initiated by Immigration and Customs Enforcement, the Federal Bureau of Investigation and the Drug Enforcement Agency . *Id.*

The court recognizes that requiring *Miranda* warnings prior to questioning would delay processing of airport arrivals. Costs would be increased since the number of those who refuse to answer questions, request a lawyer and are detained by CBP for longer periods would increase. Whether such a dramatic departure from current law is warranted in view of the changed circumstances post-9/11 is a decision best made by administrative agencies or the appellate courts.

### IV. Conclusion

The statements made by the defendant in response to the questions asked by Officer Umowski on December 29, 2008 are admissible.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: September 25, 2009
Brooklyn, New York